Federal Trade Commission v. Dorfman. Okay, Mr. O'Quinn. Mr. O'Quinn, on behalf of Steven Dorfman, good morning. Good morning. For decades, administrative agencies, including the SEC and the FTC, have methodically and intentionally expanded their own power by seeking and obtaining oversized awards of monetary relief that vastly exceed the penalties offered by their authorizing statutes. Willing courts have employed an improperly expansive reading of Porter to aid the executive branch's expansion, invoking unfettered apparent authority and equitable powers to impose punitive monetary judgments merely by mislabeling those non-equitable forfeitures as disgorgement or restitution. Despite the fact that these monetary judgments are imposed to penalize wrongdoers jointly Mr. O'Quinn, could you help me with something about the record? Absolutely. Could you tell me where in the record you argued before the district court that section 19 was unavailable because the commission was not going to use frozen assets for consumer redress? Yes, Your Honor. Where in the record is that? Yes, Your Honor. Well, primarily it's important to understand that at the time that the preliminary But where in the record was that? Your Honor, that came up at the time that we argued the need, excuse me, the motion to dismiss the second amended complaint and also, Your Honor, in the So this is a written filing that you filed in response to that that would say that? Yes, Your Honor. I believe that's in the motion to dismiss. I also believe it was argued before the court in the oral argument related to the emergency motion to dissolve the injunction. But I'd like to address, Your Honor, an important procedural fact about waiver, which is, I think, what you're pointing to. And that is it's important to understand that at the time the preliminary Well, no, I don't view that as waiver. I view the failure to make an argument as forfeiture. Okay. Well, Your Honor, at the time of the preliminary injunction, Section 19 was not even raised by the FTC. It was not even an issue before the court. It was not a subject of the preliminary injunction hearing. It was not a subject of the TRO. And the addition of that at the time of the first amended complaint was the first time that came forward, there was never a motion to renew the preliminary injunction. So that issue was actually never put forward as a preliminary injunctive issue. So I think it's important for the court to understand the unique procedural nature of how we get here today. For instance, the initial complaint on which the preliminary injunction was issued was filed by the FTC in October of 2018. That complaint was withdrawn by the filing of a first amended complaint. At the time that that was withdrawn, the preliminary injunctive relief that would have been issued, even if properly issued, would have been withdrawn along with the complaint. The second complaint, the first amended complaint, was actually dismissed by the district court for failure to state a claim in its entirety. Thereafter, there was a period of time where there was no pending complaint. And then the second amended complaint was filed and never was there ever a motion thereafter related to the preliminary injunction. I thought the complaint added section 19 as an alternative basis for the relief it sought. The first amended complaint added both a second defendant and section 19. That complaint was dismissed by the district court for failure to state a claim. The second amended complaint also included section 19, but there was never a preliminary injunction motion or a motion to renew that would have brought forth the preliminary injunction entered on the first complaint to apply to the second complaint. The law would require a motion to renew because the preliminary injunctive relief would have been withdrawn with the first complaint, and if somehow it survived into the first amended complaint, it would have been dismissed along with the failure to state a claim. It's strange credulity, Your Honor, to think that you could have a likelihood of success on a complaint which was also subject to dismissal for failure to state a claim. So while I understand the court's question about section 19, it's important to understand that over the four years that we've been fighting this claim and raising our arguments over and over, section 19 didn't become an issue until the first amended complaint was pending before the court, and we have raised at each instance, at the motion to dismiss, at the motion to dissolve the injunction, that section 19 required an administrative proceeding and could not go directly to court. That has been something that we have argued throughout this proceeding, and we continue to argue today. It's important to understand that not only have federal agencies expanded their own authority, but willing courts have shielded these government actions, and this presents this court with a unique opportunity to address this injunctive relief. Very rarely does this court have an opportunity to actually have a preliminary injunction that has not merged into a final judgment. So each of the cases that you will look to, while they will argue that they can seek particular relief, even if that case were correct as to final relief, there's still the question as to whether or not they had preliminary injunctive authority to seek it. Section 19 nowhere authorizes preliminary injunctive relief outside of the restrictive constraints of section 13B. Section 13B provides the sole and exclusive method by which they can obtain preliminary injunctive relief, and it requires notice and limited duration. Neither of those were present here. So it's important for this court to understand that the order that comes out from the district court exceeds the authority of the agency's right to seek that relief, and it exceeds the court's authority to issue that relief. It is void ab initio. There can be no forfeiture of an argument where the court's order that is to be enforced is void on its own terms. As occurred in this case, courts issue these preliminary injunctive orders in ex parte proceedings. They deprive individuals of their assets, unbounded in time, unbounded in location, untethered to the bad acts that are set forth in the complaint. They go further with the receivership to deprive the corporations of their ability to hire counsel, and then the courts enforce the rule that say that corporations cannot appear pro se. In this case, Your Honor, the court-appointed receiver sat at counsel table with me at the preliminary injunction hearing, but never filed a notice of appearance on behalf of the defending corporations. They were later defaulted. We had to file a motion to compel, to set aside the clerk's default, and ask the court to compel the receiver to even file an answer so that the corporations were not defaulting. Even then, the receiver never raised the procedural defenses. So absent us standing here today, this case would have been like all the others, where no one challenges the authority of the administrative agency to seek that ex parte relief, and then to go forward and get its final relief without any challenge. So about the authority. So you argue in your brief that the telemarketing sales rule is not enforceable under Section 19, right? That's correct. But the Telemarketing Act at 15 U.S.C. 6102C1 provides that the rule shall be treated as a violation of a rule under Section 57A regarding unfair or deceptive acts or practices. And then rules under 57A are enforceable under 57B, which is Section 19. So why doesn't that leave this conduct subject to enforceability under Section 19? I'm glad you asked that question. My argument is a procedural one. They can seek that same relief, but they needed to do it within the administrative process. They needed to go through the administrative process just as they would have under Section 19. However, even if the court were to determine that because that rule were to somehow have transformed itself into a rule that triggered the direct right to go to court, the relief that's being sought in this case is punitive in nature, the final relief, and you cannot seek ancillary injunctive relief to secure assets. You cannot use a preliminary equitable function to secure assets for a punitive final form of relief. Additionally, nothing in Section 19 unwinds the restrictive nature of Section 13B and the FTC's sole path to get a preliminary injunction. What's your support for the fact that this is punitive rather than money that will serve as redress for customers under Section 19? Your Honor, SEC Lu provides the court with an excellent walkthrough, what could be done by an agency on a prospective nature that would allow it to plead within the strict constructs of equitable relief. Equity abhors a penalty. The fact that the FTC continually argues the badness of the acts of Mr. Dorfman is evidence. It is an example of the fact that they seek to punish him with this result. Aren't most crimes where customers can receive restitution bad? I mean, why is that an unfair argument to make? There's nothing wrong with it being bad, and there's nothing wrong with wanting to punish them as long as the penalty is within those that Congress has provided. Here, they want to have their cake and eat it, too. They want to be able to say that they are proceeding to punish that violation, but they want to use the equitable relief that's afforded by Section 19, and it's limited. It's not like the SEC's broad equitable remedies that are available to it. It's consumer redress. It's rescission of contracts. But what's your argument that the plan is not to use this for consumer redress, that the plan is to make this a punitive sanction? Absolutely, Your Honor. The answer to that is because the amount of funds frozen is unlimited. The time in which the funds that were obtained is unlimited. There's no effort to tie the funds that are frozen to the bad acts that are alleged in the complaint. If he were to obtain a dollar today working at McDonald's, he would be subject to that asset freeze for that dollar. There is nothing about that process that is properly within the constructs of a constructive trust doctrine, which is the appropriate doctrine to look to for those type of prejudgment restraints. So when you look at the final relief, SEC v. Graham, a decision of this Court affirmed in CoCash, requires each district court to actually look past the labels that are given by the administrative agency and see what is the actual nature of the relief. CoCash tells us that just because you call it disgorgement doesn't mean it's not a penalty. Cots got you. Oh, I'm sorry, Your Honor. I thought I was answering a question. You were, and I think you had finished it. Thank you, Your Honor. Mr. Hoffman. Good morning, Your Honors. May it please the Court. Mr. Dorfman took in $180 million through his telemarketing scam, but so far the receivers only been able to recover about $30 million of that. And the main issue in this case is whether the district court had authority under Section 19 of the FTC Act to maintain a freeze in those assets so that they aren't further dissipated and that the money can be paid back to consumers if the FTC prevails at the end of the day. There was a lot of discussion here about penalties and so forth. I just want to emphasize that all of the money that the FTC recovers, we are going to pay back to consumers if we prevail in this case. That's the purpose of this case. It's not penal. I also note that these are the same arguments that Mr. Dorfman made in his first appeal. Is there any record evidence about that, what the Commission is going to do with the money it recovers? There is our complaint, which asks for equitable relief in the nature of rescission of contracts and so on and so forth. I can tell you that the Commission returns hundreds of millions of dollars to consumers every year. In the past, our practice has been that if it was impossible to return money to consumers, it would go to the government. We don't do that under Section 19 now because Section 19 provides only for consumer address. Our position is that any money that we recover will go to consumers and, of course, to the administration of the funds in order to get it to consumers. There's no evidence about it in the record at this point? I don't think there's evidence of that because it's a question of the legal arguments that haven't been raised yet. The question here is simply, is an asset freeze appropriate to safeguard the assets that are available for consumer address? It's not really a question that there would be evidence of. The answer for that reason is no. Your position is that you'll be legally obliged to do that? Correct. If, for some reason, the court enters a judgment that allows it to do something else, then Mr. Dorfman could appeal, but that's all premature. I think Mr. Dorfman's main argument is that the Supreme Court's recent decision in AMG sort of turned everything upside down and required the district court to vacate the asset freeze, and that's clearly wrong. AMG held that the FTC can't obtain monetary relief under Section 13b because that provision only authorizes injunctions. But here, the FTC is suing under a different provision, Section 19, which expressly authorizes monetary relief and any other relief the court finds necessary to address consumer injury, and that express statutory authority justifies the asset freeze. Now, Mr. O'Quinn mentioned a couple of times that the FTC didn't seek to renew its preliminary injunction after it amended the complaint to add a Section 19 claim. I don't think he actually sort of glanced at that argument in his brief, but I don't think he actually made that as a full-fledged argument in his brief. But in any event, I mean, the court considered that and said, look, the facts haven't changed. I'm not going to require the FTC to file a new motion of preliminary injunction on the same fact when there's no dispute. Mr. Dorfman's never challenged the district court's preliminary factual findings. That would be an empty gesture. I'm not going to make the FTC do that. That was certainly well within the district court's discretion at a minimum, if not required. As I said, Section 19 authorized the district court to do whatever is necessary to redress consumer injury. That's the main constraint that it places on the courts. Is this necessary to redress consumer injury? And the court here found that the asset freeze was necessary to protect consumers, protect assets for consumer redress, and preserve the status quo. And that's at page 8 of his decision, the conclusion. I think two key points I want to make. The first I think Judge Grant really covered, but is that the plain language of Section 19 of the Telemarketing Act in combination authorized the FTC to sue in the district court based on a violation of the TSR. We don't need to bring the administrative proceeding first. And the reason for that is if you look at Section 19, there's two prongs. Section 19A1 allows suits in the district court in the first instance where a person's engaged in, has violated a rule under the FTC Act or it says a rule under this subchapter depending whether you're looking at the U.S. Code or the Act itself. But then if you look at the Telemarketing Act, the same language that Judge Grant quoted says any violation of a rule prescribed under subsection A shall be treated as a violation of a rule under Section 57A of this title, which is Section 18 of the FTC Act, regarding unfair deceptive acts or practices. So I think it's as clear as day that Congress said that the rules that we're directing the FTC to promulgate under the Telemarketing Act will be treated as rules under Section 18 of the FTC Act. And the, sorry about that, the natural... It was a bit startling. No, didn't mean to, sudden movements. A lot of passion. The natural clear result of that is that we can sue in the first instance under Section 19A1 without bringing an administrative proceeding first. I honestly... So your interpretation of the language in AMG is that the Supreme Court was referring to 19A2 and not 19A1. The Supreme Court just referred to Section 19 to the extent they were talking about, to the extent the Supreme Court was talking about bringing an action, bringing an administrative proceeding and then seeking relief. They were clearly talking about 19A2. I don't think the Supreme Court... As you said, the Supreme Court only referred to Section 19. The Supreme Court just referred to Section 19. But I think the text of Section 19 is quite clear here. Section 19A1 is a violation of a rule. Section 19A2 is something not covered by a rule. And in that case, there's additional procedures that have to be followed. We have to have a final cease and desist order. And there needs to be a finding that a person would have understood this to be deceptive conduct. So that's... You know, AMC obviously wasn't directly addressing Section 19. But I think the plain language of Section 19 and Section 19 in combination with the Telemarketing Act makes clear that we can sue to enforce the TSR in the first instance in the district court. Again, I'd point the court to the Ninth Circuit's recent decision in the Elegant Solutions case. It's an unpublished decision, but it addressed the very same issue and had no difficulty affirming a final judgment based on the violation of the Telemarketing Act. What's your response to your adversary's argument that when the complaint was... I forget which amendment it was. When the complaint was dismissed for failure to state a claim, that essentially dissolved the preliminary injunction. Yeah, again, that's not an argument that I don't think was made in the briefs or in the district court. He's saying it was sort of voided and they didn't need to make that. Yeah, I mean, my reaction is I don't think that the filing of an amended complaint had the effect of vacating the preliminary injunction. Certainly, he never moved for relief from the preliminary injunction on that theory. It was a partial dismissal, wasn't it? Wasn't it? So, there was a . . . With leave to amend? We moved for leave to amend the complaint. The district court dismissed that, and then we repleted it to address the court's concerns, and the court denied a motion to dismiss there, I believe. So, there's no dispute that there is an operative complaint, and it does . . . My memory was that it was a grant in part to dismiss the first amendment complaint, and then the commission filed a second amended complaint against the same defendants, same relief, alleging more facts, and the district court denied a motion to dismiss that second . . . Yes, I believe your recollection is correct, Your Honor. I'd have to go back and look specifically at that motion because we focused on the operative complaint, which is the second amended complaint, which has not been dismissed. And again, I don't believe that there's any support for the argument that filing an amended complaint, which continues the allegations of the original complaint and expands on them, means that a preliminary injunction is somehow vacated or void. I mean, I'm not aware of any support for that. So, even if it were a total dismissal, it wouldn't matter, is your position? I think if the case were dismissed . . . No, no, no, of the amended complaint. No, it would not matter. It would not matter. And certainly, we filed a second amended complaint, and I think the dismissal . . . My view is that dismissing the first amended complaint, whether it's in part or in whole, doesn't end the case. It just brings us back to the status of the original complaint. So, let's say that we agree that preliminary injunctive relief is available under Section 19. I think our case law says under Section 13B that the government need not show irreparable harm because of textual interpretations. Do you think that under Section 19, irreparable harm does need to be shown before preliminary relief is ordered? I don't believe so. I think that what needs to be shown is what the statute provides, which is that the court has to find that it's necessary to address consumer injury. And, you know, that's what the statute requires, and that's what the district court found. I would say that in this case, that that finding was based on quite a lot of evidence that, as I said, there was $180 million taken in and there's only $30 million left. Assets were being dissipated, and if there were no asset freeze in place, then Section 19 would be potentially an empty remedy because there wouldn't be the money to give back to consumers at the end of the case. Although wouldn't that end up overlapping with irreparable harm anyway, perhaps? I mean, you can view that as sort of a type of irreparable harm, but I would prefer to view it as this is what the statute provides and the statute requires a finding of necessity, and certainly that's one way to look at necessary for consumer redress. And, you know, I think that's a... The court's determination that something is necessary, I think, is subject to abuse of discretion review. So, you know, it's certainly amply supported by the record in this case, however. You know, as I said, just going through Section 19, it gives the court... I mean, the relief provision is Section 19b, and it says the court shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons as well, but let's focus on consumers. And that's the core provision, such relief as the court finds necessary to redress injury. It can do whatever it deems necessary. The next sentence gives a bunch of examples that are non-exclusive, including rescission or reformation of contracts, the refund of money or return of property, the payment of damages, public notification respecting the rule violation. So those are all examples of things that the court can do, but it's not necessarily the limit of what the court can do. You know, to the extent, as I said, to the extent that Mr Dorfman is arguing that what we're seeking here is legal relief or punitive in nature, again, that's the exact same argument he made in his first appeal, which the court rejected in that case. I believe that that's law of the case, but in any event, there's certainly no basis to it. We've only asked in the complaint for equitable relief. The only relief we are seeking is to give back the money to consumers that Mr Dorfman received from them due to his telemarketing scam. Do pleadings sometimes reflect a different intention? Are requests for non-equitable damages sometimes pleaded? In FTC cases? I'm not aware of any case in which the FTC has ever pled a request for damages. We've always, you know, since we've been primarily proceeding under Section 13B, we've always sought only equitable relief, and the complaint seeks, you know, seeks the specific language, I think, is it tracks the sort of broad categories of equitable relief, rescission or reformation of contracts, restitution, refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief. You know, we're not seeking any legal relief. We're not seeking damages. You know, there may be some, you know, to the extent that there is some question as to whether equity imposes limitations on what we can recover, that's really a question to be addressed at the merit stage down the road, but we're not seeking anything beyond what equity will permit us to recover, given the words of this statute. If there are no further questions, we would ask that the judgment be affirmed. Thank you, Mr. Hoffman. Mr. O'Quinn, you've saved four minutes. Please, the Court. Your Honor, the answer to your question, asking for a point in the record where we discussed the argument you referenced, I would point the Court to Docket Entry 431, which is the transcript on the emergency motion where that was discussed with the Court, and I would also... The page. Pardon me? You don't have the page, do you? I do not have the page, Your Honor, although I'm happy to identify it in a 28-J motion. We'll look at it. I mean, letter. Thank you, Your Honor. Additionally, I'd like to note, we cited in our brief Ace Am Insurance v. Waddles, which reflects the fact that in federal practice, any question which has been presented to the trial court for a ruling and not thereafter waived or withdrawn is preserved for review. Your Honor, I'd like to also note that the dismissal was not a dismissal in part. It was a full dismissal. It was done by paperless order, but it was an unambiguous full dismissal, both in the ruling from the bench that we got from the Court and in the paperless order that was issued on the docket, entirely dismissing the case in its full. It did allow for refiling, but it did dismiss the entire case. The complaint or the case? It dismissed. I would have to go back to see. It's a paperless order, Your Honor, so it is not a reasoned order, but it dismissed the complaint, and had a complaint not been refiled, there would have been no case. So while they were given leave to refile, during the pendency of that, there was no pending allegation. There was no relief being sought, and the law says that when you refile a complaint, even if you replete the same claims, there are new claims laid that day. The doctrine of relation back does not apply in this particular instance. You also asked a question of whether or not the FTC ever sought damages, and the answer was a bit of a no, and the reason that they have difficulty answering that is because they have often sought damages. They just call it disgorgement. So the court has to engage in actually looking at the relief that's requested, the nature of the relief in the complaint, and make a determination about whether it's equitable. What's before this court is the preliminary injunctive relief, but because that is entered by implied power of the court, ancillary to the final relief, that equitable remedy, whatever its contours, is reliant on it being ancillary to equitable final relief, and if it's just a little bit of a penalty, if it's just a little bit to punish, it is not equitable relief. Equity abhors a penalty, and I would direct the court to SEC v. Graham for an excellent discussion on that issue. I would also ask the court to use the same careful definition of forfeiture that the court reflected to me when we discussed waiver a moment ago when looking at the money damages here. They are forfeitures that are imposed by the court. A preliminary injunctive relief traditionally is a preservation of the status quo. The receivership order that gets imposed in this case and in other cases closes a business, it liquidates assets, it damages reputations, it is mandatory in nature, it exceeds anything that would really approximate a preliminary injunction in the classic sense of that preservative term. But here, statute restricts the common law right to seek that preliminary injunctive relief. And what's before this court is whether or not the FTC's practice stays within its statute. All we're asking this court to do is to read the plain language of Section 13b and the plain language of Section 19 and see that nothing in either of those statutes allow the FTC to engage in the preliminary injunctive ex parte actions that it did in this case. We believe the order is void of initio and must be stricken. Thank you, Your Honor. Thank you. We'll move to the next case.